## Case No. 2,682.

### CHILDS v. SOMERSET & K. R. CO.

[Brunner, Col. Cas. 593;[1] 20 Law Rep. 561.]

Circuit Court, D. Maine. 1857.

PRACTICE—VERDICT, WHEN SET ASIDE AS BEING AGAINST EVIDENCE — CONTRACT—EXTRA WORK RECOVERABLE ON IMPLIED ASSUMPSIT.

1. This court will not set aside a verdict as being against the evidence, unless it can see that the jury, in coming to their result, were influenced by passion or prejudice, or unwittingly fell into a plain mistake.

2. The plaintiff, by special contract, agreed to build certain bridges and depots for the defendant corporation, for which he was to be paid partly in cash and partly in shares of their capital stock. In the progress of the enterprise it became necessary to do much extra work and furnish materials not provided for in the special contract. *Held*, that the plaintiff was entitled to recover the whole value in money of the extra work and materials thus furnished, upon an implied assumpsit, and that the agreement to take pay in shares did not extend to this part of the job.

At law. This was an action of assumpsit, in which the plaintiff [Enoch L. Childs] declared specially on two contracts in writing, whereby he agreed to build the bridges and depots on the line of the defendant's railroad, and also in a general count for work, labor, and materials. The contract provided, that he was to be paid for the bridges the sum of one hundred and three thousand dollars, twenty-five thousand dollars whereof was to be paid in shares of the capital stock of the corporation, and the residue in money. The payments were to be made monthly, upon certificates of the engineer of the proportion of the contract price earned during the preceding month, eighty per cent of such certified amounts being paid within ten days after the presentation of each certificate, and the remaining twenty per cent on the completion of the entire work. T. e depots were to be paid for wholly in money, at an agreed price for the whole work, upon similar monthly estimates. In the progress of the work it was ascertained, that it became necessary to rebuild one of the spans of one of the bridges, and to elevate it, to permit the public to use the river, and their contract was made touching such new work, for which the plaintiff was to be paid a fixed sum, seventy-five per centum in money and the residue in stock. The plaintiff alleged and offered evidence tending to prove that he. had performed all these contracts, and had done a large amount of extra work upon, and furnished many materials for, the bridges and depots, not provided for by either of the contracts, and for which he was entitled to recover upon the general count for work, labor, and materials. The jury were instructed that he had a right to recover as upon a quantum meruit, for any work and

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

materials done and provided which were not embraced within either of the. contracts; and the question occurring whether he was to be paid therefor wholly in money, or partly in money and partly in stock, it was agreed that the jury might find the amount, if any, which the plaintiff might be entitled to recover, and the value of the stock at the time it was demanded, and the court should afterwards decide whether the extra work and materials were to be paid wholly in money, and amend the verdict accordingly. The jury having so found, the plaintiff moved to amend the verdict, and also for a new trial, because the jury had fixed the value of the stock at only twenty-five per cent of the par value, which, it was insisted, was contrary to the evidence.

E. R. Hoar and C. T. Russell, for plaintiff.
Lot M. Morrill and H. W. Paine, for defendants.

CURTIS, Circuit Justice. The rule followed by this court in respect to setting aside verdicts as being against the evidence is entirely settled. It requires the court to see that the jury, in coming to their result, were influenced by passion or prejudice, or unwittingly fell into a plain mistake. They were instructed that the burthen of proof was on the plaintiff to satisfy them what the market value of this stock was at the time he demanded it; and that they ought not to fix its price at any greater sum than it appeared upon the evidence, to their reasonable satisfaction, it could have been purchased for, at the time of the demand, which, according to the evidence, was in the autumn of 1855. I do not understand that this instruction is complained of as incorrect in point of law.

The only evidence respecting the market value of the stock was, that in his contract of June 3, 1853, the plaintiff agreed to take, in part payment for his work, two hundred and fifty shares of the stock at its par value; and that he made a similar agreement in 1854, when he rebuilt and elevated the single span of the bridge at Augusta. The plaintiff, who was a witness, states that he had pledged some of the stock at the rate of eighty-five dollars per share, and afterwards some at fifty dollars a share; that he sold some at sixty-five dollars a share, and exchanged some for other property at a price not fixed. The dates of neither of these transactions were stated, but it appeared they were some considerable time before the demand. It is argued that the agreements between the plaintiff and defendants, that he would take a large amount of this stock in part payment for his work, at its par value, is evidence that such was its market value, and it is no doubt true, that it has a tendency to prove that it was so at the dates when these agreements were made. But, considering the highly speculative character

of railroad enterprises, which is so notorious, that I should hesitate to say that either the court or the jury must be presumed to be ignorant of it, I should feel some difficulty in declaring that in the absence of all other evidence, it was a presumption of law, that the shares continued to bear their par value after the lapse of about two years, and the completion of the road. But this question is not of practical importance now, because the evidence clearly showed that in this instance the shares did not maintain their par value. The only sale put in evidence was at sixty-five dollars in the hundred; and whether the entire cost of the road was then ascertained, did not appear. The estimated cost of the road was six hundred thousand dollars. The actual cost, exclusive of the plaintiff's claim for extra work, was seven hundred and fifty thousand dollars. It was originally intended to encumber the road with a debt of three hundred thousand dollars, and to raise from stockholders the remaining three hundred thousand dollars in money and work. In point of fact, only about two hundred thousand dollars was paid in by the stockholders. I think it must be admitted that on this state of the evidence, a very difficult task was imposed on the jury, when they were required to assess the value of this stock on a given day in the autumn of 1855. It would not have been surprising if they had said, we have no satisfactory evidence by which we can fix the value at any particular sum; the plaintiff, on whom the burthen of proof is, has not shown us, with reasonable certainty, anything concerning it, and we cannot therefore allow more than a nominal value. If they had so found, it would have been difficult, to say the least, to disturb their verdict. Having, probably, that general knowledge and skill respecting the intrinsic as well as the saleable value of similar property, which a jury may be expected in some degree to possess, and the local knowledge of the country where the road is, which they also probably possessed, and applying them to the evidence in the case, they fixed the value at twenty-five per centum of the par value. I cannot say, upon the evidence, that they fell into a plain mistake in not fixing it at a greater sum; and the motion for a new trial must therefore be overruled.

As to the motion to add to the amount of the verdict, I think it should be allowed, and the verdict amended accordingly. At the trial a doubt occurred to me, whether the rule laid down in Pepper v. Burland, Peake, 139, and since followed in England and this country, that when a building contract has been departed from, and not abandoned, the contract is still to govern the price of the work done under it, so far as it can be traced and applied, might not entitle the defendants to pay for the extra work by stock, in the same proportion in which they were to pay for work under the contract in

stock. In other words, whether the contract which the law implies, to pay for extra work, would not be a contract to pay for it in the same ways and by the same modes of payment as the other work was expressly agreed to be paid for. But after hearing counsel, and upon further reflection, I am satisfied the doubt was not well founded. The promise implied by the law, in such a case, is a promise to pay in money, what the extra work is reasonably worth; and is in no respect qualified or governed by the existence of a special contract for doing other work, however intimately the two kinds or amounts of work may, in fact, be connected together. The law cannot safely or consistently with sound principles imply any contract containing special stipulations as to the times and modes of payment. This case supplies an illustration of the difficulty of doing so. The amount of capital stock of the corporation was limited, and the value of each share depends upon the observance of such limitation. Both parties were willing to contract to give and receive a specific amount, for specific work. But it would be an unwarrantable assumption to imply from this a willingness to give or to receive an additional amount for additional work. The special contract has not been applied, in any case, so far as I know, to any work not done under it; and in Robson v. Godfrey, 1 Starkie, 275, 1 Holt, 236, Gibbs, C. J., refused to apply the terms of credit and mode of payment by a bill of exchange, to additional work not done under the special contract which provided for such credit and mode of payment. The verdict must therefore be amended by the addition of such sum as equals seventy-five per centum of the amount of stock found by the jury as due for the extra work.